## Richards *versus* Nixon.

1. Under the Act of 21st March, 1806, authorizing amendments of the declaration or plea, a party has no right to a continuance, on alleging surprise, on account of an alteration *which is merely formal*.

2. It was proper in the Court to permit the defendant to add the plea of bankruptcy above a year before the cause was tried, and after it had been several times on the trial list, the discharge having taken place before the suit was brought.

3. As to the construction of the Act of Congress of August, 1841, as respects assignments made in contemplation of bankruptcy, see this case.

4. The order of addressing the jury is generally in the discretion of the Court below.

5. Where the defendant plead payment with leave, and afterwards a discharge in bankruptcy, and the plea of payment was traversed, and the discharge and certificate were impeached for fraud, it was *held* that the defendant was entitled to the conclusion.

6. The *regularity* of the discharge of a bankrupt cannot be inquired into *collaterally*. The certificate of such discharge is impeachable for *fraud* only.

7. Evidence offered to show fraud in procuring a discharge in bankruptcy, should be offered in chief, and not merely as rebutting evidence.

8. Evidence calculated merely to impeach a witness for the defendant, without proof that the defendant himself was implicated in the transaction, was not admissible as evidence of fraud on his part in obtaining the discharge in bankruptcy.

ERROR to the Common Pleas of *Fayette county*.

This was a suit by Adam Richards, surviving John Mustard, deceased, *v.* Moses W. Nixon.

The action was upon a single bill of the defendant, given to the plaintiff, dated December 12, 1840, for $230.69 for balance due them for their work, as carpenters, done to a brick house, built by defendant on a tract of land then and for many years before in his possession as his own. In 1842–3, he disclaimed title, whereupon it was, in 1843, sold as the property of his father, William Nixon, in whom the title appeared to be. Credits—May 7, 1841, $40; April 1, 1842, $50.

The summons issued June 23, 1847. *Narr.* filed July 30, 1847. August 2, 1847, defendant filed affidavit of defence, and *pleaded payment, and payment with leave, &c.* Same day, replication non solvit: issue and rule for trial. 1848, September, on list, continued. December, on list, continued by consent. December, on trial list. December 11, 1849, defendant added the plea of bankruptcy. It was filed, with leave of the Court, and plaintiff excepted.

The plea of bankruptcy set forth a *discharge* on 25th March, 1843, as a bankrupt, by the District Court of the United States

[Richards *v.* Nixon.]

for the Western District of Pennsylvania, under Act of Congress of August 1841.

The allowance of such plea was the *first error* assigned, the plaintiff contending that it should not have been allowed after more than two years' delay and issue joined upon the pleas of payment, &c., the cause having been four times on the trial list.

Upon the trial in January, 1851, the plaintiff gave in evidence the single bill declared on, and rested.

The defendant thereupon offered in evidence the record of his bankruptcy above stated, upon *his petition*, filed June 13, 1842. It appeared from it that the Court appointed August 15, 1842, as the time of hearing, &c., on which day he was declared a bankrupt, and S. W. Black was appointed assignee. September 22, 1842, petition for final discharge. The Court appointed 8th December, 1842, for hearing. November 23, 1842, exceptions to discharge filed by A. & L. Clark. December 8, 1842, continued. On 25th of March, 1843, he was discharged.

The defendant offered to read the final certificate of discharge. The plaintiff's counsel objected on the ground that the *time* of hearing for the final discharge was not fixed by a *continuance to a day certain;* that is, that the 25th March, 1843, when it appears he was finally discharged, was not a day fixed for the hearing: it appearing, also, that certain persons had, before that time, objected to his discharge, and filed exceptions. The Court overruled the objections and admitted the evidence, and plaintiff's counsel excepted. This was assigned as the second error.

The certificate of discharge was read.

A due-bill to John Mustard was returned for $130. Richards not noticed. A. & L. Clark returned as creditors.

Defendants rested.

The plaintiff now showed that he had duly served upon the defendant a notice that his discharge and certificate as a bankrupt would be impeached for fraud, and the grounds were specified. On the trial, evidence was given for the purpose of proving fraud. The deposition of William Nixon, the father, was given in evidence on the part of the plaintiff. In it he stated that in the month of March, 1842, he purchased from the defendant all the sheep he owned, &c. He stated that it was done to cancel a debt which the defendant owed him for the sheep. A field of oats, and one of corn, was also given up by defendant to the deponent.

After the plaintiff had rested, the defendant's counsel gave in evidence several judgments against him as surety of Foster, Nixon & Co., obtained in the spring of 1842, which were liabilities created prior to February, 1842.

E. Bailey was examined, and testified that he paid to the Bank of Brownsville, a certain note of William Nixon for $658; that he paid it at the request of William Nixon, who furnished

[Richards v. Nixon.]

him with the money.    He further said that a judgment was given by William Nixon to H. Griffith, the endorser, for his security.

The plaintiff then offered to prove that E. Bailey claimed to have that judgment paid out of the proceeds of sale of land of William Nixon, which was sold in 1843.    This was offered, as expressed, to *show the fraud of the whole transaction.*

This testimony was rejected, on the ground that it was not rebutting evidence.    Exception was taken on the part of the plaintiff.    This was the subject of the *third* assignment of error.

The plaintiff's counsel claimed the conclusion to the jury, but the Court decided that the defendant's counsel were entitled to it.

The plaintiff's counsel submitted several points; some of which were, viz. :

4. That in such a case as this, it is not incumbent on the plaintiff to give *direct* evidence that the transfers and exchange in question were *voluntary* on the part of the defendant.    It is sufficient if the design to hinder, delay, and defraud creditors, or any one creditor, can be fairly inferred from all the evidence in the cause.

Answer.    If the jury believe that the defendant was really indebted to William Nixon, to the amount of the property transferred to him, and that transfer was not made *voluntarily* and in contemplation of bankruptcy, this would not be a fraud on the Act of Congress, so as to affect the validity of the discharge.    No design to hinder and delay creditors can be inferred by the jury from a fair transfer of property, in payment of a *bonâ fide* debt; and such a transfer could not be considered fraudulent, either under the Act of Congress or otherwise.    It is true that a transfer of property may be fraudulent under the Act of Congress, although there is no actual design to hinder and delay creditors, if done voluntarily and in contemplation of bankruptcy.

5. That it was incumbent on the defendant to show that the transfers of the sheep, corn, and oats, and exchange of wagons, were made *bonâ fide* and for a valuable consideration.

Answer.    It is the duty of the defendant to satisfy the jury that the transfer of this property was for a valuable consideration and *bonâ fide* debt, and that defendant was indebted to William Nixon to the amount of the value of the property transferred. The Court further charge you, that if William Nixon had a present right to sue, the plaintiff must satisfy you that the transfer was made in contemplation of bankruptcy, in order to avoid the discharge.

The Court further charged the jury as follows: "The first inquiry was, was there a *bonâ fide* indebtedness?    If not, then there is an end of the matter.    2. If there was indebtedness, was the transfer *voluntary* and in contemplation of bankruptcy?    *Voluntary.*    We say where one *has a present right of action*, and pro-

[Richards *v.* Nixon.]

perty is transferred in discharge of the indebtedness, and there is no evidence as to whether the debtor made, the offer, or the creditor made the claim, it may be presumed by the jury (where the contrary would involve a legal fraud) that the demand proceeded from the creditor. *In contemplation of bankruptcy.* Insolvency is not conclusive of this. Assignments to creditors standing in close relationship is not sufficient evidence. The intention to prefer must be accompanied with the contemplation of bankruptcy. Where the transaction is fair, the debt meritorious, the whole of the property not disposed of, other debts paid in the usual way, and the ordinary business of the debtor pursued afterwards in the usual way;—if the bankrupt be a merchant, and he adds new stock; if a farmer, and he afterwards sows and plants in the usual way—these are circumstances which fix the intention, the *quo animo.*

"The next inquiry will be, has there been actual fraud?"

Verdict was rendered for the defendant.

The first section of the Act of 21st March, 1806, provides that in all cases where any suit has been brought in any Court of Record within this Commonwealth, the same shall not be set aside for informality, if it appear that the process has issued in the name of the Commonwealth, against the defendant, for moneys owing or due, or for damages in trespass, or otherwise, as the case may be; that said process was served on the defendant by the proper officer, and in due time; nor any plaintiff nonsuited for informality in any statement or declaration filed, or by reason of any informality in entering a plea; but when, in the opinion of the Court, such informality will affect the merits of the cause in controversy, the plaintiff shall be permitted to amend his declaration or statement, and the defendant may alter his plea or defence on or before the trial of the cause; and if, by such alteration or amendment, the adverse party is taken by surprise, the trial shall be postponed until the next Court.

Error was assigned to the admission of the plea of discharge in bankruptcy. 2. To the admission in evidence of the certificate of discharge. 3. In rejecting the evidence referred to in the bill of exceptions. 4. In allowing to the defendant's counsel the conclusion to the jury. 5 and 6. To the answer to the fourth and fifth points on part of plaintiff. 7. To the further charge of the Court.

*Veech* and *Kaine,* for plaintiffs in error.—As to the plea of discharge in bankruptcy not being in time, reference was made to 8 *Ser. & R.* 181; 3 *Denio* 269.

The certificate of discharge is *primâ facie* evidence of its having been duly granted, but not conclusive: 4 *Yeates* 352–3.

[Richards v. Nixon.]

As to transfers in contemplation of bankruptcy, reference was made to 4 *Barr* 287 ; 1 *Johns.* 373.

*Miller* and *Howell*, for defendant in error.—As to the conclusion to the jury, it was observed that the plea was *affirmative*, and as it rested on the defendant he had the right to the conclusion : 3 *Yeates* 86 ; 1 *Id.* 404. Also opinion of KENNEDY, J., in 4 *Rawle* 283–4, as to the conclusion in replevin ; and if error had been committed as to the conclusion, it might not be good cause for reversing the judgment.

The opinion of the Court was delivered by

BLACK, C. J.—The Court permitted the defendant to plead his discharge as a bankrupt, though he did not offer to do so until long after the cause was at issue on the plea of payment. Matter which arises after the cause is at issue must be pleaded before a continuance intervenes, unless the Court for special reasons permit it to be done *nunc pro tunc.* But here the discharge was before the suit was brought, and not *puis darrein continuance.* It is the common case of "informality in entering a plea." Omission to set forth a part of the defence has always been held to be within the statute of amendment. It was right to allow this plea to be added if it affected the legal or equitable merits of the case ; and that it did is very clear, for there was a defence good in law which could not be reached without it.

The party whose duty it is to begin the evidence has a right to conclude the argument. It can only be determined by a reference to the pleadings. In this case there were two pleas, payment and bankruptcy. To the *first* the replication was *non solvit*, and we are not informed how the other was met on the record. We presume everything against a plaintiff in error whose paper-book is defective ; and therefore we take it for granted that the plea of bankruptcy was also traversed, and that both issues threw the burden of commencing the proof on the defendant. This presumption is strengthened by the course which the trial took. The discharge was objected to when it was offered in evidence, and its admission is assigned for error in this Court. Here, then, were two affirmative pleas, both denied by the plaintiff, and both to be supported by the defendant. Nothing can be plainer than the right of the defendant to open and close. But if the decision had been wrong in this respect, we are not inclined to believe that any judgment ought to be reversed for such an error.

The objection to the certificate of discharge was made apparently on the ground that the proceedings which led to it were irregular. It is impossible for us to determine whether this be true or false, since neither the certificate nor any part of the record referred to is on our paper-book. This alone makes that exception valueless

[Richards *v.* Nixon.]

to the plaintiff in error. But we will add, that, the discharge being the judgment of a Court having competent jurisdiction, its regularity cannot be inquired into in this collateral way. Besides, the act of Congress makes the certificate conclusive of itself and impeachable for fraud only.

The fact that Eli Bailey paid a note with funds furnished him by William Nixon, the drawer, and afterwards claimed the amount out of the drawer's property, does not seem to have been admissible for any legitimate purpose, there being no offer to follow it by proof that Moses Nixon, the defendant, had anything to do with either the payment or the subsequent false claim for reimbursement. If it did show, or had any tendency to show, a "fraud in the whole transaction" under investigation committed by the defendant, it should have been offered in chief, and not at a time when rebutting evidence alone could be heard.

The Court substantially instructed the jury that the discharge was void if there was actual fraud, or anything had been done by the defendant which was made fraud by the act of Congress; and that the transfer of the property mentioned in the plaintiff's specifications, or any portion of it, if made as there alleged, would amount to such fraud, and entitle the plaintiff to recover. But it was added that the law would be otherwise if the transfer was not made voluntarily and in contemplation of bankruptcy; that the onus of proving the debt, for which the goods were assigned, to be honestly due, lay upon the defendant, and *that* being established, the plaintiff must show that the transfer was made in contemplation of bankruptcy, or spontaneously by the defendant, without demand from his creditor.

Such is a brief summary of the charge on all the points really in the cause, and we see nothing in it contrary either to the bankrupt law itself, or to any judicial construction of it. It is true the word *voluntary* does not occur in the statute, but it has been decided by this Court (4 *Barr* 284) that a judgment given, not voluntarily by the debtor, but at the instance of the creditor, more than two months before the petition, for a debt suable at the time, is no fraud on the law. That the character of a transfer of property ought to be tested by the same rule which applies to the creation of a lien on it, has not been denied either by the plaintiff's argument or elsewhere.

LOWRIE, J.—

The capital question of this cause is, was the Court right in allowing the defendant to add the plea of bankruptcy after the cause was at issue on the plea of payment, and several times on the trial list, and near a year before it was actually tried? Why not? The Act of 1806 says "the defendant may alter his plea

[Richards v. Nixon.]

or defence on or before the trial." This does not refer to mere matters of form, else why provide for cases of surprise? A party has no right to allege surprise on an alteration that is merely formal. The law means that he shall not, by a slip of pleading, be concluded as to the line of defence, and that he may, on or before the trial, plead any other defence which he claims to have. Nor can we say that the defence of bankruptcy is an exception. We are to inquire as to legal rights and defences, and the morality of the defence is excluded from our consideration. If there be a full legal defence, there can be no legal claim. It is a mistake to say that this plea is not to the merits; for, in this respect, the proper contrary of merits is form; and against a demand at law, a legal discharge from the claim is a matter of at least legal merit, and not at all of form.

The charge of the Court is right throughout. One point of the plaintiff was not directly affirmed, yet it was sufficiently so. In its sense it refers to the statute of Elizabeth, which was not in question. The answer of the Court gives the proper instruction as to the influence of the bankrupt law, which was the true question. Besides this, the Court was not bound to tell the jury that direct evidence of fraud was not necessary; for this is implied in submitting to them the indirect evidence of it.

The order in addressing the jury is generally in the discretion of the Court below; but here the defendant had the affirmative of the issue, and also a sufficient *onus* of proof to entitle him to the conclusion. There was no error in the trial.

Judgment affirmed

LEWIS, J., and WOODWARD, J., concurred with the other judges.